# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § | CRIMINAL NO. H-14-20 |
| STEVEN PATRICK JONES | § § § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas and Jay Hileman, Assistant United States Attorney, and the Defendant, Steven Patrick Jones, and the Defendant's counsel, John R. Teakell, pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1.      The Defendant agrees to plead guilty to Count One of the Indictment.   Count One charges the defendant with Conspiracy to Commit Wire Fraud in violation of Title 18, United States Code, Section 1349.   The Defendant, by entering this plea agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Cooperation

2.      The United States reserves its option to seek any departure from the applicable sentencing guidelines, pursuant to Section 5K of the United States Sentencing Guidelines Manual, or Rule 35(b) of the Federal Rules of Criminal Procedure, if in its sole discretion, it is determined that such a departure is appropriate.   In that regard:

(a)     Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice with the exception of the DOJ Organized Crime and Gang Section;

(b)     Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States.  Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)     Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)     Defendant agrees to provide truthful, complete and accurate information and testimony;

(e)     Defendant agrees to provide to the United States all documents in his possession or under his/her control relating to all areas of inquiry and investigation.

## Punishment Range

3.     The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1349, is imprisonment for not more than twenty (20) years and/or a fine of not more than $250,000.  Additionally, the defendant may receive a term of supervised release after imprisonment of up to three (3) years.  Title 18, U.S.C. §§ 3559(a)(1) and 3583(b)(1).  Defendant acknowledges and understands that if he should violate the

2

conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to two (2) years, without credit for time already served on the term of supervised release prior to such violation.   Title 18, U.S.C. §§ 3559(a)(1) and 3583(e)(3).

## Mandatory Special Assessment

4.      Pursuant to Title 18, U.S.C. § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court   a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.   The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010,   Houston, Texas   77208, Attention: Finance.

## Fine and Reimbursement

5.      Defendant understands that under the Sentencing Guidelines, the Court is permitted to order the Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release; if any is ordered.

6.      Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment.

7.      Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he is requested to do so.   In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his

3

sentencing.

## Immigration Consequences

8.     The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.   The defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States in the future.   The defendant's attorney has advised the defendant of the potential immigration consequences resulting from the defendant's plea of guilty.

## Waiver of Appeal

9.     Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.   The Defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined on any grounds set forth in Title 18 U.S.C. § 3742. Additionally, the Defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final.   The Defendant waives the right to contest his conviction or sentence by means of any post-conviction proceeding.

10.     In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.   The Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from

4

his counsel, the United States or the Probation Office, is a prediction, not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the Defendant will receive. Defendant further understands and agrees that the *United States Sentencing Guidelines(USSG)* are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

11.     The Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

12.     The United States agrees to each of the following:

(a)     At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a  two (2) level downward adjustment pursuant to U.S.S.G. Section 3E1.1(a) should the Defendant accept responsibility as contemplated by the Sentencing Guidelines;

(b)     If the Defendant qualifies for an adjustment under U.S.S.G. Section 3E1.1(a), the United States agrees not to oppose the Defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his role in the offense if the Defendant's offense level is 16 or greater.

5

## United States' Non-Waiver of Appeal

13.     The United States reserves the right to carry out its responsibilities under guidelines sentencing.   Specifically, the United States reserves the right:

    (a)    to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

    (b)    to set forth or dispute sentencing factors or facts material to sentencing;

    (c)    to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office; and,

    (d)    to file a pleading relating to these issues, in accordance with U.S.S.G. Section 6A1.2 and Title 18, U.S.C.§ 3553(a).

## Sentence Determination

14.     Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, U.S.C. § 3553(a).   Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.   If the Court should impose any sentence up to the maximum established by statute, or should

the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

15.    Defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance.   Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.   Defendant understands that the rights of a defendant include the following:

(a)    If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if the Defendant, the United States, and the court all agree.

(b)    At a trial, the United States would be required to present witnesses and other evidence against the Defendant.   Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them.   In turn, the Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.   If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(c)    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   However, if the Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

16.    Defendant is pleading guilty because he *is* guilty of the charge contained in

Count One of the indictment.   If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.   The following facts, among others would be offered to establish the Defendant's guilt:

Intermodal Wealth, Inc. was at all times relevant a corporation based in Panama. Intermodal Wealth, Inc. had a corporate office in Houston, Texas, as well as offices in Panama City, Panama, and Blue Island, Illinois.   Intermodal Wealth, Inc. was the successor to Ecoenergy Group, Inc. d/b/a Intermodal Wealth, an Illinois corporation (collectively referred to as the "Companies").

Defendant STEVEN PATRICK JONES ("JONES"), a Texas resident, was the President of the Companies.

Co-Defendant John Patrick Acord ("Acord"), a Texas resident, was the Chief Financial Officer and/or a consultant for the Companies.

Beginning at least as early as September 2011 and continuing until in or about September 2013, the Defendants agreed with each other to devise a scheme and artifice to defraud in which they and others would solicit persons (the "Investors") to purchase investments in intermodal shipping containers (the "Investment").   Defendants described the terms of the Investment as follows:

a.        Investors purchase intermodal shipping containers from the Companies;

b.        Defendants, by and through the Companies, manage the intermodal shipping containers and lease them to third-party businesses;

c.        The management and leasing of the intermodal shipping containers purportedly generates a profit; and

d.        Investors receive a guaranteed annualized return of at least 13% to in excess of 16% derived

8

from the purported profit dependent upon the amount of investment funds placed with the Companies.

The Defendants made various misrepresentations to the Investors to induce them to purchase the investment.   These misrepresentations included the following:

a.      That the Companies' Chief Financial Officer was an individual named "John Delano" when, in truth and fact, "John Delano" was a fictional name of Acord;

b.      That Investor profit payments were derived from the leasing of intermodal shipping containers to third-party businesses when, in truth and fact, investor profit payments were predominantly, if not entirely, Ponzi payments derived from funds provided by the Investors; and

c.      That third-party business lease agreements were between the Companies and legitimate third-parties when, in truth and fact, Defendants created sham lease agreements with such parties to create the false appearance that Investors' intermodal shipping containers were being leased by legitimate third-party businesses.

In addition to these misrepresentations, the Defendants omitted and failed to disclose to the Investors the following material facts:

a.      That Acord had two prior federal convictions for fraud-related offenses;

b.      That Acord had twice been permanently enjoined by the United States Securities and Exchange Commission;

c.      That "John Delano" was a fictional name employed by Acord in connection with the investment;

d.      That JONES had a prior federal conviction related to shipping and interstate commerce;

e.      That previous Investor funds were applied to the personal use and benefit of the Defendants and their family members;

f.      That Investor profit payments were not derived from the leasing of intermodal shipping containers to third-party businesses at times when such payments were predominantly, if not entirely, Ponzi payments derived from funds provided by the Investors;

g.      That Defendants created sham third-party business leases to create the appearance that Investors' intermodal shipping containers were being leased by legitimate third-party businesses;

h.      That the Defendants used numerous accounts with financial institutions that were opened and maintained by Defendants and others in an effort to avoid detection of the fraudulent scheme;

i.      The assets and liabilities of the Companies and other information impacting the guaranteed-nature of the Investment; and

j.      The financial and business backgrounds of Defendants, including personal liabilities relating thereto.

On the basis of these and other misrepresentations and omissions, the Defendants caused Investors throughout the United States and internationally to invest in intermodal shipping containers.   The Defendants used Investor funds to make Investor profit payments to the Investors in order to prolong the scheme and lull Investors into the false belief that the Investment was being executed in the manner represented to Investors by the Defendants.   They continued to sell the Investment after becoming aware that the Securities Commissioner of the Texas State Securities Board had issued an Emergency Cease and Desist Order on July 20, 2012, a basis of which was the Defendants' fraudulent conduct in connection with the Investment.   The scheme involved the use of interstate wire communications facilities in the following ways:

d.      Telephone calls;

e.      Email communications via the Internet;

f.      Electronic communications involving the clearing of checks and other financial transactions

through the Federal Reserve banking system;

g.       Transfer by wire and electronic means of funds between financial institutions and investment companies located outside the State of Texas and financial institutions and investment companies located in the Southern District of Texas.

Investors sent payment to the defendants by United States mails and also by wire transfers from banks outside the state of Texas to banks within the Southern District of Texas.

On or about the following dates, the investors listed below sent funds to bank accounts controlled by the defendants in the Southern District of Texas, by use of interstate wire communications facilities:

| INVESTOR | APPROX. DATE | AMOUNT |
|----------|--------------|--------|
| L.J.S. | January 19, 2012 | $102,500.00 |
| S.C. | January 20, 2012 | $11,500.00 |
| D.T. | June 6, 2012 | $117,500.00 |
| E.S. | October 11, 2012 | $502,500.00 |
| E.S. | January 4, 2013 | $300,000.00 |

The government has not included in this proffer all facts within its knowledge regarding each crime charged in this case.   The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the Defendant's plea to the offense set forth in the Indictment.

## Breach of Plea Agreement

17.     If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the Defendant's plea and sentence will stand.   If at any time Defendant retains, conceals or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then may move the Court to set aside the guilty plea and reinstate prosecution.   Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

18.     Whether the Defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office, whose judgment in that regard is final.

## Complete Agreement

19.     This written plea agreement, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant and his counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

12

20.    Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____ *May 1* _____, 2014.

_____
STEVEN PATRCK JONES
Defendant

Subscribed and sworn to before me on _____ *May 1* _____, 2014.

DAVID BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
Jay Hileman
Assistant United States Attorney
Southern District of Texas
Telephone: (713) 567-9391
Facsimile: (713) 718-3301

_____
John R. Teakell
Attorney for Defendant
2911 Turtle Creek Blvd., Suite 300
Dallas, Texas 75219
(214)-523-9076

13

## PLEA AGREEMENT - ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> and <u>Policy Statements</u> and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction.   Further, I have carefully reviewed every part of this plea agreement with Defendant.   To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____            5 - 0 1   - 14
Attorney for the Defendant                                    Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me.   My attorney has fully explained and I   understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case.   I have read and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

_____            5/01/2014
DEFENDANT                                                       Date

14